People of the State of New York v Merkin (2021 NY Slip Op 03389)





People of the State of New York v Merkin


2021 NY Slip Op 03389


Decided on May 27, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 27, 2021

Before: Gische, J.P., Kern, Oing, Shulman, JJ. 


Index No. 450879/09 Appeal No. 13939-13939A Case No. 2020-03513 

[*1]The People of the State of New York, Plaintiff,
v
J. Ezra Merkin et al., Defendants, Ariel Fund Limited et al., Relief Defendants, Ascot Partners, L.P., Relief Defendant-Respondent. Geraldine Fabrikant et al., Objectors-Appellants.


Kramer Levin Naftalis & Frankel LLP, New York (Arthur H. Aufses III of counsel), for Geraldine Fabrikant, appellant.
Orloff, Lowenbach, Stifelman & Siegel, P.A., New York (Laurence B. Orloff of counsel), for Sandalwood Debt Fund A, L.P., Sandalwood Debt Fund B, L.P. and Hudson Investment Partners, L.P., appellants.
Norton Rose Fulbright US LLP, New York (Judith A. Archer of counsel), for respondent.



Orders, Supreme Court, New York County (Saliann Scarpulla, J.), entered July 16, 2020, and July 20, 2020, which, inter alia, granted the motion by the court-appointed receiver for relief defendant Ascot Partners, L.P. (Ascot) to approve the "Net Investment Value" methodology for distributing Ascot's assets, unanimously affirmed, without costs. Objector Menachem Sternberg's appeal from the foregoing orders, unanimously withdrawn, before argument, without costs, pursuant to the parties' stipulation dated May 3, 2021.
In 2009, Ascot was placed into an equitable receivership to pursue recovery on behalf of its investors of funds stolen by Bernard L. Madoff Investment Securities (BLMIS). After marshalling limited funds to distribute to investors, the receiver submitted a proposed plan of distribution using the Net Investment Value (NIV), which adopted a "cash in/cash out" approach, taking into account any "collateral recoveries" the investor might have received, to calculate a pro rata percentage of the investor's "net investment" against the total net investment, which was then applied to the amount available for distribution. Several investors, including objectors, urged the court to adopt the Last Statement Method (LSM) instead, which would distribute funds based on the values in the investors' last statements before the fraud was discovered.
Contrary to objectors-appellants' contention, the court properly evaluated the receiver's proposed distribution according to whether it was "fair and reasonable" (see SEC v Wang , 944 F2d 80, 81 [2d Cir 1991]), without consideration of the limited partnership agreement (LPA) in effect, which provided for the LSM. Ascot was under a receivership directed to pursue equitable remedies, and any distribution plan was subject to court approval. Significantly, even if Ascot itself was not a Ponzi scheme, virtually all of its assets were invested in BLMIS, rendering any profits "fictitious," since they were based on nonexistent security trades.
Under the circumstances, the court providently exercised its discretion in determining that the NIV was the most equitable methodology to employ in distributing a limited pool of money to Ascot's investors (see In re Tremont Sec. Law, State Law and Ins. Litig. , 699 Fed Appx 8, 15 [2d Cir 2017], cert denied sub nom. Haines v Lange , __ US __, 138 S Ct 1264 [2018]; see generally In re Bernard L. Madoff Inv. Sec. LLC , 654 F3d 229, 238 [2d Cir 2011], cert dismissed sub nom. Sterling Equities Assoc. v Picard , 566 US 1032 [2012], cert denied sub nom. Ryan v Picard and Velvel v Picard , 567 US 934 [2012]). Beacon Assoc. Mgt. Corp. v Beacon Assoc. LLC I (725 F Supp 2d 451, 464 [SD NY 2010]), relied on by objectors-appellants, is distinguishable in that it did not involve an equity receivership and the investors realized gains from legitimate investments.
Objectors-appellants' contention that the NIV is inequitable because it does not account for the "time value" of their money is unpersuasive[*2], given that the receiver was seeking to distribute equitably funds that were insufficient to cover each investor's actual losses (see Commodity Futures Trading Commn. v Walsh , 712 F3d 735, 754-55 [2d Cir 2013]). We note that courts have regularly endorsed the NIV in distributing funds to victims of Ponzi schemes and that the New York Attorney General and most of Ascot's investors were in favor of this methodology as the most equitable.
We have considered objectors-appellants' remaining contentions and find them unavailing or academic in light of our determination. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 27, 2021